There is one matter before the court this morning. We will adhere to the usual time rules. Remember this is on South Street. The traffic is loud. These are not recording. These are recording devices, not microphones. Keep your voices loud. Please call the first case. Good morning, Your Honor. I'm Suzanne Lose. I represent the City of Chicago, the appellant in this case. May it please the Court. The class certified in this case consists of participants in the City's health care plan, whose medical bills were paid by the City, who obtained third-party recoveries against which the City held a subrogation lien, and which liens were reduced by less than one-third based on a claim to attorney's fees under the Common Fund Doctrine. This morning I will explain that that class certification rested on several critical legal errors about whether participants can bring a Common Fund claim at all when planned terms preclude it, as well as whether such claims can be barred by settlements. And I will also discuss how individual questions greatly predominate over the common ones in this case. And finally, I will explain that there is no basis for applying the 10-year statute of limitations here because Common Fund claims are not based on written agreements. And we will rest on our wreaths for the remaining arguments. To begin with, planned participants cannot bring Common Fund claims. The City's health care plan provides that the City, quote, shall have specifically agreed in writing. Planned participants are bound by this provision. Attorneys are not. That's what Bishop and Scholten's hold, and that's why the Illinois Supreme Court in those cases held that those Common Fund claims were appropriate because those plans do not govern the relationship between the City and an attorney who is an outside party to the plan. But for participants who are a party to the plan, however, the longstanding rule under Illinois case law is that when an express contract governs a subject matter, equitable principles of equitable, estoppel, and unjust enrichment will have no application. And here, the matter of the City's responsibility for a participant's attorney is clearly governed by express contract terms, and that does matter who is asserting the claim. Equities line up very differently when it's an attorney asserting the claim versus a participant. When the attorney is asserting the claim, the attorney has provided a service for which the City has received a benefit. Did you say it doesn't matter who is asserting the claim? It does matter who is asserting the claim. If I misspoke, I apologize. Certainly my point that it does matter because the equities line up very differently. When an attorney brings a claim, the idea, the equitable principles behind that is that the attorney has provided a service, the City has received a benefit for which the attorney has not received anything in exchange. But when a participant brings a claim, they may have provided a service in the sense of pursuing a third-party tort visa, and the City provides a benefit, but the participant receives plenty in exchange for that benefit. The participant receives a full array of the City's health care benefits in exchange for that. So, you know, it's not the case that that participant is getting something for nothing in that situation. So for these reasons, we submit that a participant is not a proper party to bringing a common fund claim. And for this reason, the class is not properly certified because it is made up of planned participants rather than attorneys. The representative party, if you will, in this case, would that party's attorney have had a common fund claim? That party's attorney could, and in fact did, bring a common fund claim during the course of negotiating the settlement of the lien. So, yes, that attorney would have had a claim. At this point, that attorney has been fully compensated the full amount under the contract that he agreed with with his client and would no longer have a claim. Okay, that was my point, that that attorney has been fully compensated at this point. Yes, Mr. Eisen has been fully compensated. And beyond this standing question, we also submit that the Circuit Court erred in ruling that settlements of their common fund claims. Was the attorney fully compensated at a loss to the participant? If the attorney was fully compensated, he could have pursued some of the amount that was due from the city, and in some sense that is a loss to the participant. But it is not one the participant can recover because the participant has agreed under the plan to accept the responsibility for her attorney's fees. But is the city then not receiving an inequitable benefit that it really is not entitled to? No, the city is receiving a benefit for which it has given consideration in exchange under the plan. It was specifically contracted for. It's part of the give and take of the overall contract of the plan. So the city receives a benefit in exchange for all the health care services it provides its participants. It's one of the things it asks for in exchange. And that's one thing that makes it different than when the attorney brings the claim, because the attorney doesn't get those things under the contract. Also, in the cases where the common fund has been applied, where the court saw the attorney as bringing it, doesn't the court also say that the plan, if you will, has been fully paid back initially in order to apply the common fund? The plan has received its recovery under its lien, if that's what you're asking. Is that right? So that the contractual rights and liabilities are no longer applicable, and so that the attorneys now turn to an equitable consideration for the attorney's claim. Is that right? Well, these are all actually handled in one bundle. I'm not sure. I mean, usually these are all resolved together because you have these different claims against different parties. But the city receives its recovery, and the amount of the lien will be reduced by whatever the parties agree based on the contractual claims. That's how it's been done in your practice. But I'll let you go on. So then to follow up on that, so then if the plan has been fully compensated, then what is left, is that not an inequitable amount that's going to the city? The city is not receiving any more than the total amount of its lien, if I understand your question. The city has paid its medical bills, and it recovers up to the full amount of those. Often they're reduced, though, however, because these claims are often settled. The attorneys request a reduction of the lien. Right, to $2,900. Right. And so then that amount of the lien is paid over. The city isn't seeking anything beyond that. It is the attorneys or the participants in this case, unlike other cases, that is seeking money back in exchange for the, to cover attorney's fees under the common fund doctrine. And to return to my point about the circuit court erred in ruling that Stefanski and the class members are not bound by their settlements. What the record shows here is that when attorneys raise common fund claims, they are negotiated and eventually the city's attorneys and the plaintiff's, the participant's attorney reach an agreement about lien reductions and pay according to that amount. The participants should be held bound to those agreements under the voluntary payment, accordance satisfaction, or race judicata principles as they apply. Stefanski argues those defenses cannot be invoked as a matter of policy, and that was also the grounds the circuit court gave for rejecting accordance satisfaction here. But there's no case holding that as a matter of policy, common fund doctrines, unlike any other claim, cannot be settled, and much less be settled for less than a total one-third of the lien. Instead, what the Illinois have to say on the policy of settlement is that public policy favors settlement. There's no reason that policy should not be applied with full force here. A settlement in this context promotes efficient resolution, preserves judicial economy, and promotes the party's freedom to contract as in any other situation. And what the cases say at most about the policy of the common fund doctrine is that's a reason for recognizing the claim when there's an inequity that needs to be resolved, not that those claims are fully exempt from defenses that would otherwise apply to any other equitable claims. So that's not a reason to disregard, policy is not a reason to disregard settlements negotiated at arm's length, and of course in every single one of these cases with the representation of counsel. The circuit court also erred in concluding that common questions predominate over individual ones here. The Illinois Supreme Court's case in Smith holds that the relevant inquiry is whether the common or individual issues will be the object of most of the efforts of the litigants and the court. And predominance is met if a plaintiff can show that right of recovery for the named plaintiff will result in recovery for all the class members. For each case here, different facts will bear on the elements of the common fund claim as well as the value of the attorney's services and the defenses to be raised. As for the elements of the common fund claim, there are three. The fund must be, the plaintiff has to show that the fund is created as a result of legal services by the attorney, that the subrogate did not participate in the creation of the fund, and that the subrogate benefited from that fund. So the first individual question for each of these cases is whether the source of the city's recovery is from an attorney-created fund. The record in this case shows that the city often pursues and often recovers from other sources as well. Even when a participant has hired an attorney and is pursuing a third-party recovery, the city often recovers from the participant's vehicle insurances, medical pay, uninsured motorist coverage, underinsured motorist coverage, and sometimes from workers' compensation recoveries. So in each case, there needs to be an evaluation of where the city even recovered its funds from, whether it was an attorney-created fund. And second, the court has to look at the degree of the participation by the city to see if the plaintiff has met its burden of showing that the subrogate did not participate in the creation of the fund. And this has to be done on a case-by-case basis. As a subrogate, the city's attorneys are pretty active in pursuing the liens, and they reach out to the insurance adjusters too. They do their own investigations, they're gathering evidence, and they communicate with the attorneys and each case will need to be analyzed to see what exactly, what role the city's attorney played in the case to determine if there's been substantial participation. And third, the reasonable value of attorney's fees is an individual question. Stefansky claims that this is formulaic, that this is always going to be 33 and a third percent, but there isn't a statute or case or contracting or contract that establishes that to be the exact amount in these cases. Stefansky... Facts. How much did the city get in this case? How much did it recover? $2,900. And so it did all of that, contacting all of those sources for $2,900? We do this, it's something that the city does as a matter of course. We send out questionnaires to determine, you know, a little bit more about what happened in the incident when we've had flags that indicate there might be a third-party recovery or other sources to recover from. Yeah, I understand that the participant never filed a claim with her own insurance, and therefore the city could not go against it. Right, and the city did contact an adjuster for Ms. Stefansky's insurer as well as the adjuster for AAA, the third-party tort fees attorney. And so, you know, the city made a couple of phone calls. The city reached out to Mr. Stefansky, I'm sorry, Ms. Stefansky's attorney, gathered up the police reports and the medical bills and had conversations with Mr. Stefansky's attorney while on the other side, you know, Mr. Eisen did similar things. You know, he gathered up the medical bills and did his investigation and had a couple of conversations. So, I mean, we would submit. And in this case, it turned out that the city's attorney had a bill that participants' counsel didn't have that not only supported an extra payment of the bill, but supported an argument for, you know, additional pain and suffering because they were able to recover. And so that's what happened in this case, and we would submit that substantial participation on behalf of the city's attorney. But even more importantly, you know, these sorts of facts need to be sorted out for each and every case. These are individual questions, and it's the plaintiff's burden to prove that element. So this is another individual question, and beyond that, there is the reasonable value of attorneys' appease. There's, as I explained, there's really no basis for this idea that 33 and a third is automatic. What the Illinois Supreme Court says in Schulten's is that when the doctrine applies, an attorney is entitled to the reasonable value of legal services. I think the Illinois Supreme Court's case in Callahan, which we cite in our brief, is instructive on this. When an attorney brings a claim for fees based on quantum merit, you know, what is the usual and customary fee may be a part of the equation, but the amount in the contingency fee is not automatic because that's not what the claim is based on. And there are a host of other factors that go into considering what is a reasonable value of attorneys' fees, such as the skill of the attorney, the difficulty of the case, degree of responsibility, and the time and labor put into the case, things of that nature. So our point is that you at least have to look at the case in light of these considerations before the court can exercise discretion in determining what is a reasonable value of attorneys' fees for a particular case. So these are more individual questions. In addition, there are additional questions about whether claims are barred by settlement. There were some unique features in Stefansi's case that may not be present in others, such as payment under protest was something Ms. Stefansi did in this case, and also how payment was handled in this situation with the passing along of the offer with no intent of accepting it in order to get the payment released from AAA. The facts may very well be different in each case and need to be looked at to see if the elements of court and satisfaction voluntary payment are met in a particular case. The circuit court regarded the common question to be about the city's purported uniform rejection of the common fund doctrine, but that's not supported by the record. If the city were just rejecting the common fund doctrine altogether, you would see the city trying to collect 100% of the lien every time. Instead, the city negotiates, takes a look at each case, makes arguments for its side about whether the doctrine does or does not apply, and in essence takes each case as they find them, treats them differently based on what's going on in the particular case. That is sort of the antithesis of a uniform treatment of the common fund doctrine. So we submit that there are a host of individual questions that predominate over any common questions in this case. And lastly, I want to turn my attention to the statute of limitations issue. You need to make this the last one. You're already over your time. If I may, just briefly, I'll be brief on this point. If the class remains certified, it should be narrowed according to the five-year limitations period. You only get the ten-year period under Section 206 if you have an action on one of the specific listed instruments in that section. And these common fund claims are not based on any of those written instruments. The plan is a contract, but Stefanski does not seek to enforce rights under it. As I mentioned before, that contract actually precludes recovery of attorney's fees. So there is no contract on which to base a ten-year statute of limitations. And so we submit that to the extent any class remains certified at all, it falls within the five-year limitation period, just as unjust enrichment and equitable estoppel claims would do. And we do ask that the judgment, the order of the circuit court certifying this class be reversed. Thank you. Thank you. Counsel, she took 20 minutes, so if you need 20 minutes, you'll have that same amount of time. Thank you, Your Honor. May it please the Court, my name is Michael Carnuth. I represent the plaintiff, Nellie Stefanski, as well as the certified class. The issues in this class action case involve a uniform body of settled law and a common set of facts which the lower court correctly concluded made class certification appropriate. For class certification purposes, all you need is one issue of law or fact that's common and predominating. In this case, we have numerous issues of law and fact that are common and predominating. First on the issues of law, this area is settled. It's been settled for decades and mandates that when a health plan like the city's The costly argument of your opponent is that you don't have the right representative for the class, that the participant cannot be the representative, that only the attorney can. Well, that's their standing issue, Your Honor. And that issue has been addressed and rejected numerous times. It was rejected. There's no decision that expressly Yeah, I was going to say, what decision has rejected that? What's your best case? Well, the Bishop case, the Shultz case, all those cases were brought by plan participants to assert a fond doctrine claim. Those two cases They were brought what? The Bishop and the Shultz case, which are Illinois Supreme Court cases, were brought by the plan participant seeking a reduction in the plans asserted reimbursement claim. And in those cases, the court rejected application of plan language as barring the common fond doctrine. And in those cases, the plan language was more expressed about the fond doctrine. Didn't they do so by saying that the attorney wasn't bound by the language of the contracted issue? Your Honor, I'll read directly from Shultz, which says, It is now well established that a litigant or a lawyer who recovers a common fond for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fond as a whole. A litigant or a lawyer. We're talking about the claim being brought on behalf of either the litigant or its counsel. Don't the courts go on to say that they consider this, if not in substance and form, a claim brought by the attorney? An independent action by the attorney. Well, Your Honor, first off, Bishop recognized that this is public policy. Public policy of the state of Illinois is that the common fond doctrine always applies to a health plan as a sort of reimbursement claim. And it would be unreasonable to narrow that application to the agent of a participant rather than to have it. The common fond was found to be applicable there. And the courts went to, if you will, great lengths to make sure that either there wasn't preemption or that the language of a plan wouldn't prevent it by saying that this is outside of the contract's language. And we are going to apply these equitable principles because the claim is that of the attorney. Your Honor, Bishop is very clear, but, you know, in addition to Bishop, there's the Smith v. Marzolf case, which is a third district case, which addresses the very same issue that the city raised and rejected limiting the claim to the attorney only. It stated that it would be legal nepotism to allow attorneys standing to assert the claim and not the clients who already paid them in full. It allows the plan participant to step into the shoes of the attorney and to assert the claim. And the case that we were involved in before the first district court and health cost controls versus Sevilla, that case involved a situation where the attorney was paid in full. There was some re-judgment on behalf of the claimant in that case, the participant, and the issue of standing, the issue of plan language preemption, a lot of the issues that they're raising now were addressed and rejected by the health cost controls court. The trial court or the appellate court? The appellate court. The 2006 decision that we cited in our ruling. Well, the 2006 decision of the appellate court sort of rejected other issues. They sent it back because they thought that there may be, that the common issues might prevail and on other issues, but they didn't really address, at least with much analysis, the standing issue or the right of a participant to bring a common front. That was front and center on the arguments by health cost controls. In their briefs, they attacked the issue of standing, and there's a passage in the decision that says we don't quibble with Mr. Sevilla having this claim, bringing this claim on behalf of the class. And it goes on to say that the CNA insureds, which were the participants in that case, could be represented by Mr. Sevilla as a class representative. It gave standing to Mr. Sevilla, and that was crystal clear in the court's decision. So they sent the whole issue back to the trial? They didn't send the issue back of standing. Whatever happened to that case when it went back? As we cite to in the record, that case came back to Judge Riley in chancery. It was certified. The class was, the plaintiff and the class were given summary judgment, class summary judgment. And what was the class? Because in the Sevilla case, the attorney was a party to the litigation. It was not. It was a party that got dismissed because they were paid in full. The attorney was paid in full, and therefore the damages that were left were the damages of the insured. The insured was left without. That happened after remand? No. That happened long before the case came to the public court the second time. It's just a little confusing in the opinion because they keep referring to the cross-ambulance. Well, because there was a counter-claim. Correct. There was a counter-claim that Mr. Sevilla brought against the health plan. But so did Burns, the attorney. They refer to it in the plural, cross-ambulance. The attorney originally brought a cross-claim as well. It was a counter-claim. But the public court recognized that the lawyer in that case was dismissed long before. And the only one that was remaining was Mr. Sevilla. And that's why it said we don't quibble with Mr. Sevilla bringing this claim on behalf of a class. It's just very confusing because it still refers to them in the plural. So you're saying that the participant in that case was the only one who was left because they had dismissed the attorney, and they allowed the class anyway with the participant? Correct. These are cases where it's really the participant that has the claim because the attorney is always getting paid in full, and the one that's left holding them back is the participants. And for the city or any other plan to try to narrow this type of claim to attorneys only is inappropriate. The purpose of this is to avoid unjust enrichment to health plans that are not paying their fair share. And there's language in the Bishop case that was really critical of plans that tried to resurrect or manufacture these arguments as to how to get around the fund doctrine. And it used very colorful language, including specious and disingenuous, to describe the types of things that plans were trying to do to avoid application of the doctrine, one of which was trying to use plan language as a bar to the doctrine being applied. And, again, the language in this case is far less explicit than the language that was included in the Bishop case. In this case, there's no express rejection of the fund doctrine. There's no mention of the fund doctrine at all in the plan language. It just says that the responsibility of attorney's fees and costs would be the participants. It doesn't say that they would not pay their fair share. It doesn't say that they... So you're saying that this participant's claim was not expressly contracted out, that there was not an express contract that prohibits this participant from proceeding because of their contract with the city of Chicago? The participant does not challenge the city's right to reimbursement. That is in the plan agreement. That's in the contract. They have a right to reimbursement. What they're challenging is the city's failure or refusal to apply the fund doctrine. And that's what all these cases from 1977 through... But the city, as I understand it, is saying that there is a contract between them and the participant that says that the participant cannot proceed with this issue, dealing with the common fund doctrine. Yes, and the cases of Bishop and Shelton's and Behr and many, many others that you cite have the same type of language that the city has in their contract, actually even more explicit than what the city has in their contract. And those cases rejected contract preemption as a bar to the fund doctrine. And, you know, so we've cited those in our briefs. And they're part of the attorneys. Your Honor, that is not correct. There's no language in any of these decisions that expressly states that this is only a claim for the benefit of an attorney who is an agent for the participant. This is, as I cited, Marzoff is explicit about that. You know, Marzoff and other decisions state that we reject any limitation. Marzoff actually says that the common fund doctrine is not equitable but referred to what they call an equitable apportionment. You're referencing Smith v. Marzoff, the 1980 case? Yes, and there's other cases that cite that. I think there's another decision as well that cites the same type of language that Smith v. Marzoff cites, too, and rejects narrowing the claim to just the attorney. And it doesn't make any sense for an important public policy of this nature, which the Bishop Court was very clear on, that we don't want to do anything to unjustly enrich the plans at the detriment of injured insureds who brought these cases. And, you know, to touch on the participation prong, the city does not participate at any level that would thwart the application of the fund doctrine. We've cited to numerous deposition testimony, and even the agreement between the city and the council that they retain, just to monitor these reimbursement liens, which is CAGA and COCENCOS, that agreement says that we don't control these underlying cases, and therefore we don't have a time frame as to when we're going to resolve them or pay the C.K. firm for collecting on these reimbursement liens. But the city's benefits manager and the COCENCOS attorneys all testified that they don't sue third parties, they don't pursue actions against third parties. If the participant doesn't pursue it, they don't pursue it. And they encourage the participant to get an attorney if they don't have one because they want to maximize their recovery on these liens. So the only involvement that the city has, or CAGA and COCENCOS has, in these reimbursement liens is to protect them. And we've cited 15 cases, at least in our brief. There's many more that say protecting of liens alone is not sufficient to thwart the application of the fund doctrine. And that's the only problem. Repeat that. Protecting the lien alone, solely protecting their lien, if that's the only activity that the plan engages in, that's insufficient to thwart application of the fund doctrine. And that's all the city does in these cases. All they do is issue lien notices to make sure that everyone knows that they have a lien, and they will also provide copies of the medical bills that they paid on so that they can provide an accounting of how much they should be refunded. That alone, and all these cases that we've cited too, we've cited numerous cases, many of which they don't even try to explain away because they're crystal clear, that if your only involvement is to protect your lien, that's not meaningful participation, and it doesn't thwart the fund doctrine. The Taylor case that we cite too, that highlights the fact that even if liability was not contested in the underlying case, which makes for an easy case, and that's what the city tries to argue in this case, is that Ms. Stefanski's case was not difficult. But all of this discussion doesn't really go to who has the claim. I was just trying to address one of their other arguments. The standing issue, Your Honor, we think it's crystal clear that this is language and bishop that states, you know, but for bishop's involvement and participation in creating the fund, the plan would have no recovery. This is a situation where bishop is instructing courts that, you know, it's both the participant's and the attorney's right to pursue it. Okay, let me take a look at some other language in bishop. Sure. The court there says that we made it clear in Shelton's that the quasi-contractual right to payment of fees for services rendered belongs to the attorney who rendered the service and does not affect the contractual relations between the plan participant and the plan. So how does that impact the standing issue, that language there? That's a premise for why this doctrine should apply, because there is a third party involved. It doesn't address who has the claim. It just addresses why this is an important claim that should be, It's essentially recognizing that the fund doctrine is trying to address, you know, sort of the operating expenses that the plan has, you know, that they would be obligated to pay if they contracted for them directly. So in this instance, it's saying that the plan benefited from the services of an attorney and had it bought those services directly, it would have owed that money. There's no way that they could just walk away and say, we're not going to pay you. And so in this instance, if one of their participants, you know, contracts for that service and the city sits on the sidelines and doesn't bring its own action or doesn't issue a ten-year letter indicating to the plan participant that don't represent our rights because we want to do it ourselves and we therefore are informing you that we're not going to pay your attorney if you recover our lien. All that is is a basis, it's just a premise for the fund doctrine. It's not an elimination of the participant's rights and it's not narrowing the rights to just attorneys alone or just the agents of the participant. And, you know, the bishop also did a comparison of the fund doctrine to the Attorney's Lien Act. And in that case, you know, the Attorney's Lien Act can be brought by both the attorney and his client. You know, that was pretty clear. They were making that comparison, just like they were also making the statements  are what causes the creation of the fund. Without the participant... But if the client could bring a motion to adjudicate a lien, is that what you're saying? Correct. To resolve that lien. And, you know, that comparison I think is further support of all the other arguments that we're raising here to show that standing is not only the attorneys but also the participants. Based on the client would be basing a motion to adjudicate a lien based on its contractual relationship with the attorney. It's a different contractual relationship. Right, but there's a reason for that. There's a reason that the bishop court raised that comparison. Why would they raise that comparison if it was not to, you know, point out... Wasn't it to say to find that the action was that of the attorney? No, Your Honor. It indicates that it was for... It suggests that it was for the showing of that it's both the attorneys and the... It's another example. It's another piece of evidence I think in that case that supports our position that standing is the attorneys and the participants. The city also in its brief recognizes that Smith v. Marzoff is against them. In their reply brief, they asked this court to overturn that ruling, which there's no showing that that should be done. There's no... And it's been followed. If there was an intent by the courts to limit standing to attorneys only, that would have been crystal clear a long time ago. That issue has been raised and adjudicated several times in state court, and there's no expressed language in any of these decisions that says this is the attorneys only. And there's plenty of language in these cases that say it's either the attorneys or the participants. And a lot of these decisions, including Bishop, point out that only from the efforts of the attorney and the participant is there a fund created. You can't create a fund without the participant. The attorney is only the agent of the participant. So to limit the fund doctrine claim to just attorneys is inappropriate, given the important public policy mandate that the Supreme Court and Bishop instructed the lower courts to follow. Those arguments that were just made about the plan language not applying also negates the city's arguments about the Voluntary Payment Doctrine and Accord and Satisfaction applying. Again, the fund doctrine is not a waivable claim. It's public policy. They try to argue that, or they do argue that public policy favors settlements, but it makes no sense to apply that to another public policy that bars actions that would be otherwise illegal. And it doesn't make sense for an act to be illegal as against public policy, but to be okay if it's part of a settlement. Clearly, the public policy of the fund doctrine trumps any desire by the plan to try to settle the claim. And that was clearly spelled out in all these decisions that have rejected plan language over the fund doctrine. Okay. In terms of the- I need to wrap up, Counsel. Okay. I'm sorry, Your Honor. Our briefs are pretty clear that this is a case that is, you know, the identification of class members is very easy. They have an electronic system that identifies everyone who was part of this class. Before this court accepted the petition to hear this appeal, we were very close to finalizing who was in the class. And we've identified the reports. We've identified correspondence that shows that this is a very easy class to identify. We have had other cases that we've cited in our brief and attached to the record where fund doctrine claims were easily identified and administered. There's absolutely no problem with that. And on the statute of limitations, Your Honor, 10 years is appropriate. This is a case that emanates from a contractual right by the city to assert a reimbursement claim. The right to assert a reimbursement claim is only contractual. And the fund doctrine claim only is triggered by the fact that the city is failing to reduce its contractual right to reimbursement under the fund doctrine. And there's no dispute that their contractual right to reimbursement is a 10-year claim. It's assumed to be a 10-year statute. And in addition, the right to the fund doctrine, that is also triggered by the fact that there is a contract between the participant and the attorney. That's a 10-year contract too. That's subject to 10-year statute of limitations as well. So you're saying they're both 10-year? Right. There's two contracts at issue here. One is the city's reimbursement claim, which is pursuant to its contractual rights under the agreement. And the other contract is the plan participants and the attorney's fee agreement. And that's subject to 10 years. And the trigger of this fund doctrine claim is pursuant to the city's right to reimbursement, which is refusing to pay the fees that it should be paying the attorney that provided it. And that's not contrary to the fact that you're suing under the common fund doctrine to bring it out of the plan? But it's not being brought out of the plan. There would be no reimbursement right if the city didn't have that contractual lien. So this emanates from a contractual lien. And if the plan's agreement did not include a provision that gave them a right to reimbursement, then they wouldn't even have that right and there wouldn't be an issue here because the plan participant would keep all the funds and the city wouldn't get reimbursed. But because they've included that. No, the city wouldn't pay the fee. The city wouldn't pay the fee because it wouldn't get anything back. It wouldn't pay the fee because it wouldn't get a reimbursement back. It wouldn't have a right to get the reimbursement back. Should we be looking at what the claim is based on? The claim is based on the city's? Your claim. Correct. And our claim is based on the city's refusal to reduce its contractual reimbursement lien by the fund doctrine. And our claim is based on? Your claim is that the city is being unjustly enriched. Correct. That's your claim. Correct. It's an unjust. It's an equitable five-year statute. Right. On equitable claims. But we've cited cases that dealt with similar unjust enrichment type of claims where the 10-year statute of limitations applied because the claim arose from a contractual relationship. And that's similar to what we are dealing with here where it's an unjust enrichment claim, but the claim arises from the city's contractual right to reimbursement. And I also cited a decision by the Seventh Circuit which recognizes that. Judge Posner in the Seventh Circuit in a different case that we were involved in So he sort of described it as an offset to that contractual right. And on that basis, this would be subject to a 10-year limitation period, and that's what the court below found. And we would ask that your honors affirm the lower court's decision. The lower court put a lot of time and effort into evaluating the law in this case, a lot of time and effort into looking at all the evidence in this case, which is very extensive, and we believe did a very good job in coming to its ruling. And the city has provided no abuse of discretion. They have identified no abuse of discretion in the findings of fact that the lower court concluded. Thank you, counsel. Thank you. Thank you, your honors. Rebuttal. Just a few brief comments on some of the key cases that my opposing counsel mentioned this morning in support of Stefanski's standing argument. First, the Smith v. Morozov case in which the plaintiff was a participant. I would just point out that there was not a contract. There was not a plan provision precluding fees like we have here. We do not ask that it be overruled. It does not need to be overruled. We would point out it was decided before the Shultz and Bishop's case, which explained a lot about the nature of a common fund doctrine, and to the extent Smith is in contention with that, obviously the Illinois Supreme Court cases should be followed. And with respect to Bishop and Shultz, my opposing counsel mentioned today that these were claims that were brought by participants, but I would point out that, well, Beyer before that, by the way, was brought by an attorney. In the Bishop and Shultz case, the named party was a participant, but the attorneys were in the case. They filed petitions for attorney's fees, and they are fairly characterized, the Illinois Supreme Court said, as claims brought by the attorneys. And I won't go through all the quotes and details, but on page three of my reply brief I point out several where the court uses language where it is regarding the claims as having been brought by the attorneys. Just one example in Bishop. Bishop's attorney filed a petition for adjudication of a lien, and the court referred to the claim as the attorney making the claim in that case. But you don't disagree in your reading of Bishop that the attorney settled and the participant continued with the claim? The attorney was bringing his claim inside. I don't think it was the participant. The participant was the named plaintiff, but the issue in the case was the one the attorney had raised. The attorney was still in the case. I don't recall that he had been fully compensated and that the participant was carrying on with a separate claim as the situation that we have here. And as for health cost control, that decision simply does not address standing. I've read it several times, and it just doesn't address standing. At best the court didn't decide the issue, ignored the issue, because it didn't need to. It was remanding the denial of certification, did not hold that the class was to be certified, but remanded it because the lower court had not considered the appropriate factors in denying the certification. So that just wasn't addressed there. The one case that was addressed is not an Illinois court case, but I think it's very persuasive, and I would urge your court to take a look at the Barco case that we cite in our brief, because there the court explained that once the attorney has been fully compensated, the claim can no longer be fairly characterized as a claim being brought by the attorney, and it is the attorney who owns the claim to a common fund claim. So we submit when you have a plan such as this, which precludes attorney's recovery of attorney's fees by the participant, that plan can be enforced. There's nothing inconsistent with that. It's not the case that Bishop and Schulten's or any of these cases that the common fund doctrine trumps contracts that limit attorney's fees. In those cases, the court made sense out of both. In other words, the common fund claim did not do violence to the health plans in Schulten's or Barco because it dealt with this relationship outside of the contractual arrangement. If there are no further questions from this court, we do ask that the judgment of the circuit court, the circuit court order certifying the class be reversed. Thank you. Thank you, counsel. This matter will be taken under advisement. We appreciate your arguments. This court is adjourned.